SHELTON L. FREEMAN (AZ #009687)
**FREEMAN HUBER LAW PLLC**
6909 East Main Street
Scottsdale, Arizona 85251
Phone: (480) 398-3100
Fax: (480) 398-3101
E-mail: bkfilings@fhlawaz.com

Attorneys for Clear Energy Systems, Inc.

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>CLEAR ENERGY SYSTEMS, INC.,<br><br>Debtors. | In Proceedings Under Chapter 11<br><br>Case No.: 2:14-bk-12716-BKM<br><br>**DECLARATION OF JOHN F. RASOR** |

I, John F. Rasor, under penalty of perjury, declare:

1. My name is John F. Rasor.

2. ~~I have personal knowledge of the facts set forth herein.~~

3. I have been a shareholder in the Debtor since 2008 and have been a member of the board of directors of the Debtor (the "Board") since August, 2014, to present. I am also one of the Debtor's bridge lenders and DIP lenders.

4. In my capacity as a Board member of CES, I have been personally involved in this Chapter 11 proceeding and I have worked with counsel to formulate the proposed plan of reorganization and accomplish the actions necessary to make the proposed plan feasible from an operations and investment standpoint.

5. I make this Declaration in support of the Debtor's Third Motion to Extend the Exclusivity Period and to demonstrate to the Court that the Debtor has been diligently working to present a feasible Plan of Reorganization to the Court and the creditors.

6. I have been personally involved in both the formulation of the plan and the efforts to bring that plan to fruition. To that end, I have worked in three primary areas: (a) locating an investor; (b) preparing materials for potential investors; and (c) gathering and safeguarding the Debtor's assets to preserve for the benefit of an investor.

## I. LOCATING AN INVESTOR

7. The proposed plan centers on obtaining an investment by one or more investors, formation of a new entity, RDLLC, and contribution of the Debtor's assets thereto in exchange for a minority interest.

8. For the past eight (8) months, I and other board members and four (4) ex-CES employees have been diligently working together to attract potential qualified investors.

9. We have identified more than 73 potential investors who have the resources necessary to make an investment. I have personally contacted many of those whom we identified.

10. Moreover, we have devoted a significant amount of time to preparing multiple versions of written materials for potential investors and personally meeting with them. The written materials are continually evolving as we respond to specific and various questions raised by such investors.

11. After speaking to some of the potential investors, the Board determined that a third party market assessment study would be helpful in our efforts. Therefore, the Board engaged a research firm to prepare a market study, which examined and analyzed the market, current competition and evaluated the Debtor's business plan. The Market Study was received

after the last version of the plan and disclosure statement was filed and is now a part of the materials provided to potential investors.

12. After initial contact with the possible investors, the Board narrowed the list and sent additional information to approximately 20 people or companies.

13. In response to an objection to the disclosure statement made by TEC, the Debtor has been working with various appraisers in order to value the intellectual property and other personal property. The Debtor intends to include that appraisal information in the next version of the plan and disclosure statement it files. However, additional time is needed to complete those appraisals and, therefore, to complete the amendments to the plan and disclosure statement.

II. **WRITTEN MATERIALS**

14. At present, the written material are comprised of the following:
    a. CES Investor Package Letter (October 1, 2015);
    b. List of the Members of the Board of Directors with short bios (BRD);
    c. List of the Members of the Due Diligence Team with short bios (DDT)
    d. Why Invest in CES (September 5, 2015)
    e. Technical Background (09/22/15)
    f. Investment Brief (19 pages)
    g. Investment Disclosure (127 pages)
    h. ASI Initial Assessment (June 24-26, 2013)
    i. MARTEC Market Assessment (July 17, 2015)
    j. Confidentiality Agreement (CA)

15. We have compiled for presentation to potential investors pro-forma financials, work-plans and budgets in order to get the G1000 engine to market.

FREEMAN HUBER LAW PLLC
6909 East Main Street
Scottsdale, Arizona 85251

16. The Board has made significant progress towards its goal of locating a suitable investor but requires additional time to bring a deal towards closure.

### III. GATHERING AND SAFEGUARDING THE DEBTOR'S ASSETS

17. I and other members of the Board together with several ex-employees have been primarily responsible for safeguarding and maintaining assets and recovering certain assets that had been disposed of by SARN.

18. For example, over this past summer, I spent a considerable amount of time to ensure that the building lease for the property CES occupies was extended until January 31, 2016 to preserve the investment made by the Debtor in its current premises including the installation of an oversize natural gas line, water towers and other related equipment, all of which are essential to Debtor's ability to operate the generator for demonstrations to potential investors.

19. The Board has, since the filing, caused the engine dynamometer at the Geneva facility to be refurbished and rebuilt the remaining prototype engine assembly from salvaged parts to permit demonstrations for prospective investors.

20. Importantly, I have also spent considerable time and effort to locate and recover an early concept prototype mobile genset for use in demonstrations with prospective investors.

### IV. OTHER ACTIONS TO MAKE REORGANIZATION SUCCESSFUL

21. I have also worked with other Board members to ensure that certain key former employees continue to work with the Debtor as consultants inasmuch as their involvement adds credibility to the business plan from the standpoint of an investor. These key consultants have the cumulative knowledge of the engineering and building of the technology.

22. In order to make the investment more attractive to potential investors, I and the Board have worked with a number of consultants who have evaluated and ensured the

continued enforceability of the intellectual property patents. We have taken the steps necessary to safeguard the important patents and pending patents so they remain in effect.

23. The Board members of CES have not received any compensation for their efforts since the filing of bankruptcy and have no incentive to delay these proceedings.

24. I have spent a considerable amount of time and effort to raise the financing necessary for the Debtor to reach plan confirmation as well as contributing my own funds for those purposes. Any delay in confirmation causes the Debtor to require additional funding. While the additional time requested will likely put more DIP Lender funds (including my own) at risk, the Board and I feel that extension of the exclusivity period is necessary in order to propose a confirmable plan.

25. Based on the foregoing, I submit that the Debtor has demonstrated good faith progress in the plan process and extending the exclusivity period is warranted.

DATED this 9th day of October, 2015.

By _____
John F. Rasor

FREEMAN HUBER LAW PLLC
6909 East Main Street
Scottsdale, Arizona 85251